[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12761
Non-Argument Calendar

_____

D.C. Docket No. 5:92-cr-00076-TES-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY ELENZIE CAIN,
a.k.a. School Boy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 10, 2020)

Before WILSON, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Johnny Elenzie Cain, a counseled federal prisoner, appeals the district court's order reducing his sentence under the First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 ("First Step Act").  We vacate and remand in part and affirm in part.

**I.**

 In 1992, Cain was charged in a superseding information with aiding and abetting possession with the intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) ("Count I"); and aiding and abetting the use of a firearm in a drug trafficking crime, 18 U.S.C. § 924(c) ("Count II").  Cain pled guilty to both counts, pursuant to a written plea agreement.  As part of his plea agreement, the parties stipulated that the district court's consideration of Cain's relevant conduct was limited to 53 grams of cocaine base.

A probation officer prepared a presentence investigation report ("PSI") under the 1991 Sentencing Guidelines, which described how, as part of a drug organization related to the instant offense, Cain and others robbed Milton Sanford, a member of the organization, of 5 kilograms of crack cocaine, which resulted in Cain binding Sanford and killing him.  Though a related offense, Cain was convicted and sentenced for the murder in Georgia state court.

The district court sentenced Cain to a term of imprisonment of 125 months for Count I and 60 months for Count II, to run consecutively; his total 185 months

of imprisonment was to run consecutive to his state conviction.  Additionally, the court imposed a total term of 5 years of supervised release.  In its statement of reasons, the district court identified the guideline calculations it relied on, noting Cain's total offense level was 31 and his criminal history category V, which resulted in a guideline range of 168 to 210 months of imprisonment for Count I and 60 months of imprisonment for Count II.  It also noted that it had granted the government's motion pursuant to U.S.S.G. § 5K1.1 and departed downward 6 levels to a guideline range of 100 to 125 months of imprisonment.

When in federal custody, Cain moved the district court for the appointment of counsel because he wanted to move for a sentencing reduction under the First Step Act.  Before the court ruled on appointing counsel, Cain sought a reduction of his sentence under the First Step Act and renewed his motion for the appointment of counsel.  He clarified that from his sentencing until February 6, 2019, he served time in Georgia state prison for his state murder conviction.  He did not request a sentence reduction based on Sentencing Guideline amendments.

Pursuant to the Middle District of Georgia's Standard Order for *pro se* motions under the First Step Act, a probation officer issued a supplemental PSI report, finding that Cain was eligible for a reduction under the First Step Act.  The PSI reiterated the guideline calculations from the district court's statement of reasons in its original judgment, adding that Cain's statutory range was 10 years to

3

life in prison; it also noted that the court's downward departure represented a 25.6% reduction from the bottom of the sentencing range.  It stated that Cain had not received any prior sentencing reductions under 18 U.S.C. § 3582(c)(2) or retroactive Sentencing Guideline amendments.  Based on the 2018 Guideline Manual, Cain's total offense level was 23 and his criminal history category was V, resulting in a guideline range of 84 to 105 months of imprisonment.  It noted that Cain had recently come into federal custody and had yet to complete programming or have a disciplinary record, but he posed a higher risk to the community given his criminal history.

The supplemental PSI indicated that Cain's offense was a "covered offense" under § 404(a) of the First Step Act, resulting in Cain's conviction having a new mandatory minimum of 5 to 40 years of imprisonment and at least 4 years of supervised release.  It recommended that the court use a similar reduction of 25.6% and reduce Cain's sentence to 62 months for Count I followed by 60 months for Count II and four years of supervised release.  It did not reference any reductions pursuant to retroactive Sentencing Guideline amendments.

The government responded, pursuant to the Standing Order, agreeing that a sentence reduction was warranted and recommended that Cain receive "the maximum benefit of the Guideline amendment."  Had either the probation office or

4

the government contested the reduction, Cain would have been appointed counsel, but without such dispute none was appointed.

The court issued an order granting Cain's sentence reduction and implicitly denying his motion for counsel, stating that Cain's motion:

> under 18 U.S.C. § 3582(c)(1)(B) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the First Step Act of 2018 pursuant to Pub. L. No. 115-391, and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable . . . .

The court reduced Cain's sentence as proposed by the supplemental PSI.

## II.

Cain raises two issues on appeal. First, he argues that the district court misunderstood its authority to grant a reduction by erroneously applying the limitations to reductions made pursuant to 18 U.S.C. § 3582(c)(2), rather than those made under § 3582(c)(1)(B). Second, he argues that the district court violated his due process rights by denying him a hearing on the reduction and abused its discretion by denying him counsel based on the Middle District of Georgia's Standing Order.[1]

## A.

---

[1] In his reply brief, Cain also argues that the Standing Order violated the notice requirement for defendants under Federal Rule of Criminal Procedure 49. However, because Cain raises this argument for the first time in his reply brief, we do not consider it. *United States v. Campo*, 793 F.2d 1251, 1252 (11th Cir. 1986).

5

We review *de novo* whether a district court had the authority to modify a term of imprisonment. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020). We review the district court's denial of an eligible movant's request for a reduced sentence under the First Step Act for an abuse of discretion. *Id*. Under this standard, we affirm unless the district court made a clear error of judgment or applied the wrong legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

District courts lack the inherent authority to modify a term of imprisonment but may do so to the extent that a statute expressly permits. 18 U.S.C. § 3582(c)(1)(B). The First Step Act expressly permits district courts to reduce a previously imposed term of imprisonment. *Jones*, 962 F.3d at 1297.

The Fair Sentencing Act, enacted on August 3, 2010, amended 21 U.S.C. §§ 841(b)(1) and 960(b) to reduce the sentencing disparity between crack and powder cocaine. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ("Fair Sentencing Act"). Section 2 of the Fair Sentencing Act changed the quantity of crack cocaine necessary to trigger a 10-year mandatory minimum from 50 grams to 280 grams and the quantity necessary to trigger a 5-year mandatory minimum from 5 grams to 28 grams. Fair Sentencing Act § 2(a)(1)-(2); *see also* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii). These amendments were not made

6

retroactive to defendants who were sentenced before the enactment of the Fair Sentencing Act. *United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012).

In 2018, Congress enacted the First Step Act, which made retroactive the statutory penalties for covered offenses enacted under the Fair Sentencing Act. *See* First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194. Under § 404(b) of the First Step Act, a court "that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id*. § 404(b). The statute defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010." *Id.* § 404(a). The First Step Act further states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id*. § 404(c).

In *Jones*, we considered the appeals of four federal prisoners whose motions for a reduction of sentence pursuant to § 404(b) were denied in the district courts. *See Jones*, 962 F.3d at 1293. First, we held that a movant was convicted of a "covered offense" if he was convicted of a crack-cocaine offense that triggered the penalties in § 841(b)(1)(A)(iii) or (B)(iii). *Id.* at 1301. Interpreting the First Step Act's definition of a "covered offense," we concluded that the phrase "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act"

7

(the "penalties clause") modifies the term "*violation* of a Federal criminal statute." *Id.* at 1298 (quoting First Step Act § 404(a)).  Thus, "[a] movant's offense is a covered offense if section two or three of the Fair Sentencing Act modified its statutory penalties." *Jones*, 962 F.3d at 1298.  Because section 2 of the Fair Sentencing Act "modified the statutory penalties for crack-cocaine offenses that have as an element the quantity of crack cocaine provided in subsections 841(b)(1)(A)(iii) and (B)(iii)," a movant has a covered offense if he was sentenced for an offense that triggered one of those statutory penalties.  *Id.*

District courts must consult the record, including the movant's charging document, the jury verdict or guilty plea, the sentencing record, and the final judgment, to determine whether the movant's offense triggered the penalties in § 841(b)(1)(A)(iii) or (B)(iii) and, therefore, was a covered offense.  *Id.* at 1300-01.  However, contrary to the movants' arguments, a judge's actual drug-quantity finding remains relevant to the extent that the judge's finding triggered a higher statutory penalty.  *Id.* at 1302.  Thus, a movant sentenced prior to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held that facts, such as a drug quantity, that increase a defendant's statutory maximum must be made by a jury, cannot "redefine his offense" to one triggering a lower statutory penalty simply because the district court, not a jury, made the drug-quantity finding relevant to his statutory penalty.  *See Jones*, 962 F.3d at 1302.

8

Next, we explained that a movant's satisfaction of the "covered offense" requirement does not necessarily mean that the district court is authorized to reduce his sentence. *Id.* at 1303.  Specifically, the "as if" qualifier in § 404(b) of the First Step Act, which states that any reduction must be "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed," imposes two limitations on the district court's authority. *Id.* (alteration in original) (quoting First Step Act § 404(b)).  First, the district court cannot reduce a sentence where the movant received the lowest statutory penalty that would also be available to him under the Fair Sentencing Act. *Id.*  Second, in determining what a movant's statutory penalty would have been under the Fair Sentencing Act, the district court is bound by the previous drug-quantity finding that was used to determine the movant's statutory penalty at the time of sentencing. *Id.*  Moreover, "the Constitution does not prohibit district courts . . . from relying on earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified." *Id.*

Applying these limitations, we held that if a movant's sentence necessarily would have remained the same had the Fair Sentencing Act been in effect—in other words, if his sentence was equal to the mandatory minimum imposed by the Fair Sentencing Act for the quantity of crack cocaine that triggered his statutory

9

penalty—then the Fair Sentencing Act would not have benefitted him, and the First Step Act does not authorize the district court to reduce his sentence. *Id.*

Applying this "as-if" framework, we affirmed the denials of two of the movants' motions; however, we vacated and remanded as to the others because, while the district courts had authority to reduce their sentences under the First Step Act, it was unclear whether the courts had recognized that authority. *Id.* at 1304-05. We held that it was error for the district courts to conclude that a movant was ineligible based on (1) a higher drug-quantity finding that was made for sentencing—not statutory—purposes, (2) a movant's career-offender status, or (3) a movant's sentence being at the bottom of the guideline range. Because it was ambiguous whether the district courts denied their motions for one of those reasons, we vacated and remanded the denials for further consideration. *Id.* at 1305.

Finally, we noted that, although a district court may have the authority to reduce a sentence under § 404 of the First Step Act, it is not required to do so. *Id.* at 1304. We held that a district court has wide latitude to determine whether and how to exercise its discretion, and that it may consider the 18 U.S.C. § 3553(a) factors and a previous drug-quantity finding made for the purposes of relevant conduct. *Id.* at 1301, 1304.

Here, the district court correctly found, and the parties agree, that Cain was convicted of a covered offense and that it had authority to reduce his sentence because his cocaine offense triggered the penalty provisions in 21 U.S.C. § 841(b)(1)(B)(iii) and his statutory penalty range would have changed under the Fair Sentencing Act. *See id.* at 1298, 1303-04. Because Cain's offense had a statutory range of 10 years to life that was reduced, under the Fair Sentencing Act, to a range with a 5-year mandatory minimum, the district court had both the authority and ability to reduce Cain's sentence. *Compare* 21 U.S.C. § 841(b)(1)(B)(iii) (1992), *with* 21 U.S.C. § 841(b)(1)(B)(iii) (2018). *See also* Fair Sentencing Act § 2(a)(1)-(2); *Jones*, 962 F.3d at 1303. The government asserts that, although it had the authority to reduce Cain's sentence, the district court acted pursuant to 18 U.S.C. § 3582(c)(2). However, this is based on the government's incorrect assertion that the court's ability to modify a sentence was limited to those sentences outside the new statutory range under the First Step Act, rather than the First Step Act's requirement that the original sentence be above the new statutory minimum. *See Jones*, 962 F.3d at 1303.

Consequently, the issue then becomes whether the district court correctly recognized its authority to reduce Cain's sentence under § 3582(c)(1), despite its references to limitations under § 3582(c)(2). *See id.* at 1297, 1304-05. Looking to the order itself, the district court did acknowledge that Cain's motion is pursuant to

11

§ 3582(c)(1) and that its reduction is based on the First Step Act making certain changes retroactive. However, what those exact changes are casts doubt on whether the district court understood that the First Step Act's changes applied only to the statutory penalty range, as it stated the Act applied to the Sentencing Guideline range. It also referenced § 3553(a) factors and the policy statements in U.S.S.G. § 1B1.1, both of which are limitations imposed to motions under § 3582(c)(2) for reductions made to the Guidelines by the Sentencing Commission, namely Guideline amendments. *See* 18 U.S.C. § 3582(c)(2). Further, the probation office's recalculation of the guideline ranges and the government's response, indicating that a reduction was warranted "under the Sentencing Guideline amendments," contribute to the ambiguous context of the court's action. Because it is not clear from the record whether the district court fully understood the scope of its authority, we vacate and remand the district court's order for clarification.

## B.

Where the issues presented involve a legal question, we review *de novo*. *United States v. Pringle*, 350 F.3d 1172, 1178-79 (11th Cir. 2003). However, we review the decision not to appoint counsel for an abuse of discretion. *United States v. Webb*, 565 F.3d 789, 793-94 (11th Cir. 2009).

In *United States v. Denson*, 963 F.3d 1080 (11th Cir. 2020), we held that, despite the district court having supplementary information about the defendant's post-conviction conduct, the defendant did not have a right to be present at a hearing on his motion for a sentence reduction under § 404 of the First Step Act. *Id.* at 1086-89. His absence did not violate due process, as the First Step Act does not authorize a district court to conduct a plenary or *de novo* resentencing in which it reconsiders guideline calculations unaffected by sections 2 and 3 of the Fair Sentencing Act. *Id.* at 1089. As support, we noted that the First Step Act does not mention a required hearing and sentence reduction proceedings are not a "critical stage," resulting in the defendant's absence not violating due process. *Id.* at 1086-89.

We have held that motions for sentencing modification, under § 3582(c)(2), were not "ancillary matters" connected to the original action, but rather raised challenges to the defendant's sentence; accordingly there is no statutory or constitutional right to counsel. *Webb*, 565 F.3d at 794-95. Specifically, we reasoned that because § 3582(c)(2) reductions were a vehicle for the reduction of sentences, rather than a challenge to the original sentence, and did not require the defendant's presence, it did not implicate the right to counsel granted for matters that are part of the original action, such as sentencing and resentencing under 18 U.S.C. § 3006A(c). *Id.* The district court, however, may appoint counsel to a

13

person who is financially eligible, if it determines that the "interests of justice" so require. *Id.* at 795 n.4 (noting that there may be equitable concerns that would make the appointment of counsel appropriate to ensure a just outcome).

First, the district court did not violate Cain's due process rights because the district court was not required to hold a hearing; the First Step Act does not require the defendant's presence, much less a hearing. *See Denson*, 963 F.3d at 1086-89. Second, the denial of counsel was not an abuse of discretion or a violation of Cain's due process rights. The reasoning for not extending the right to counsel to proceedings under § 3582(c)(2) mirrors many of the justifications given for not holding a hearing in § 3582(c)(1) proceedings, namely: their limited review of the sentence; their inability to increase the sentence; and that the defendant's presence not being required for the proceeding. *Compare Webb*, 565 F.3d at 794-95, *with* Denson, 963 F.3d at 1086-89. The record here does not indicate any "interest of justice" that would require representation by counsel in the exercise of the district court's discretionary decision in reducing Cain's sentence. *See Webb*, 565 F.3d at 795 n.4. Accordingly, the district court did not abuse its discretion or violate due process, and we affirm the district court's order in this respect.

**VACATED and REMANDED in part for clarification; AFFIRMED in part.**

14